809 F.2d 786
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Edward STRANGE, Jr., Appellant,
v.
NORFOLK AND WESTERN RAILWAY COMPANY; International
Association of Machinists and Aerospace Workers
Local 165; International Association of
Machinists and Aerospace
Workers, Appellees.
 No. 85-1929.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 11, 1986.
Decided Jan. 12, 1987.
 
 Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and JAMES B. MCMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.
 Randall G. Johnson (Hill, Tucker & Marsh on brief) for appellant.
 Thomas T. Lawson, Gregory McGillivary (W. Fain Rutherford, Woods, Rogers & Hazelgrove, Michael W. Wolly, Mulholland & Hickey on brief) for appellees.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Edward Strange, Jr., appeals the judgment of the district court in his action against Norfolk and Western Railway Company under Title VII and 42 U.S.C. Sec. 1981 for racial discrimination. The district court held that N & W did not discriminate against Strange because of his race. We affirm.
 
 
 2
 Strange began work as a laborer for N & W in 1973. He started training as an apprentice machinist in April 1974 at the company's facility in Roanoke, Virginia. In December 1978, Strange chose to become an upgrade apprentice, and he worked at this level until September 1979. An upgrade apprentice is one who has voluntarily ceased training in the apprenticeship program and performs the specialized work of a journeyman at journeyman wages. Strange worked as a journeyman from 1979 to 1983 when he left the machinist trade for other employment with the company.
 
 
 3
 Norfolk & Western laid off, or furloughed, workers in the machinist craft on several occasions for lack of work. While Strange was an apprentice, six furloughs occurred. On each occasion, apprentices were furloughed first and no journeyman was furloughed until all apprentices had been furloughed. Strange was furloughed twice. After he became a journeyman, however, journeymen were furloughed before apprentices on each furlough. Strange was furloughed at least twice during this period.
 
 
 4
 After one of the furloughs while he was a journeyman, believing that N & W should have furloughed apprentices first, Strange complained to N & W officials and to officials of the International Association of Machinists and Aerospace Workers and its Local 165. The company explained that under rule 41 of the collective bargaining agreement the company was allowed to keep one apprentice for each five machinists retained during a furlough. The union considered the complaint and determined that the company's actions were consistent with the collective bargaining agreement. Unsatisfied with the responses he received, Strange filed a complaint with the EEOC and a trial followed in district court.
 
 
 5
 The district court held that Strange made a prima facie case of discrimination against N & W under Title VII, 42 U.S.C. Sec. 2000e et seq. See McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). It found, however, that N & W had offered a plausible and racially neutral explanation for the apparently discriminatory treatment of Strange by the challenged furloughs. See McDonnell Douglas, 411 U.S. at 802. Once N & W met that burden, it was Strange's burden to show that the nondiscriminatory explanation was in fact not the true reason for the furloughs. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). The court found that Strange failed to make this showing. It also found that Strange had failed to make a prima facie case of discrimination against Local 165 and that it did not have Title VII jurisdiction against national IAMAW because the charges of discrimination filed with the EEOC did not mention allegedly discriminatory conduct by the national union.
 
 
 6
 Strange challenges these findings as clearly erroneous. He characterizes the fact that apprentices were furloughed while he was an apprentice and journeymen were furloughed after he and other black apprentices became journeymen as a deliberate and intentional policy change by N & W. He contends that N & W failed to follow rule 41 while he was an apprentice and then chose to follow it after he became a journeyman, for the discriminatory purpose of furloughing blacks before whites. He contends that he himself was affected once as an apprentice and twice as a journeyman by the company's change in practice under rule 41.
 
 
 7
 The district court found that N & W had had a longstanding practice, since at least 1958, whereby it could not lay off journeymen while upgraded apprentices were working. This reflected the economic reality that the presence of upgraded apprentices on the force meant journeyman labor was needed. Therefore apprentices were furloughed first. When furloughs were needed at times when there were no upgrades, however, which reflected less need for journeyman skill, the company followed its longstanding policy of allowing apprentices to finish their training uninterrupted as much as possible and it furloughed journeymen first. Rule 41 merely established a maximum number of apprentices that could be retained in any furlough. It did not require N & W to retain apprentices but left it to the company to determine its policy according to its needs and within the confines of the collective bargaining agreement.
 
 
 8
 The court found that there were upgraded apprentices at all times when Strange was an apprentice and no upgrades at the time he was a journeyman. At the questioned furloughs, white apprentices or journeymen were also furloughed. The court concluded that Strange had failed to show that N & W's explanation was mere pretext. We conclude that the court's findings are plausible in light of the record viewed in its entirety. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).
 
 
 9
 Strange also contends that the district court erred in failing to analyze the evidence under the disparate impact theory, under which the focus is on the consequences of a questioned employment practice rather than on motive. The inquiry under a disparate impact claim is whether a facially neutral employment practice, applied equally to all individuals, falls more harshly on one group than another and cannot be justified by a business necessity. Teamsters v. United States, 431 U.S. 324, 335-36 n. 15. We find no error.
 
 
 10
 Although it is true that Strange was not required to elect between the two theories, he was required to plead them both and to ensure that sufficient evidence was presented to support both. See Wright v. National Archives and Records Service, 609 F.2d 702, 711 (4th Cir.1979); Fed.R.Civ.P. 8(e)(2). This case was presented solely as a disparate treatment case. Only after Strange had virtually completed his evidence at trial were documents admitted into evidence that even suggested a disparate impact theory. No other evidence was offered that would support a disparate impact claim.
 
 
 11
 We find no error in the district court's holding that Strange did not make a prima facie case of discrimination against Local 165. The court found that Local 165 officials treated Strange's complaint exactly as they would have a complaint of a similarly-situated white worker. This circumstance is evidence of a lack of discrimination. See Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1311 (5th Cir.1980). It found that there was no evidence to show that Strange's race played any role in the union's conclusion that Strange's claim was not meritorious. Also, the record presents no basis for imposing liability on the International.
 
 
 12
 Strange also challenges an earlier ruling of the district court that his action could not be certified as a class action. He contends that the court's ruling was premature, on a motion by the company that a class action was inappropriate, and that he had not completed discovery to determine whether there was a proper class.
 
 
 13
 We find no error in the court's ruling. Federal Rule of Civil Procedure 23 provides that the district court shall determine whether a class action is to be maintained "as soon as practicable after the commencement of an action brought as a class action." The court was not required to wait until Strange sought class certification. See Cook County College Teachers Union, Local 1600, A.F.T. v. Byrd, 456 F.2d 882, 885 (7th Cir.1972) (one opposing class action may move for an order determining that the action may not be maintained as a class suit). Strange's complaint made it clear that he sought to represent a class. The court made an informed analysis of the potential class under the prerequisites of Rule 23(a). It concluded, based on information provided by N & W, that further discovery was unneeded and that the potential class was insufficiently numerous or dispersed to make joinder impracticable. See Fed.R.Civ.P. 23(a).
 
 
 14
 AFFIRMED.